GARY D. WITT, Judge.
Randolph County appeals the Labor and Industrial Relations Commission’s final award of workers’ compensation benefits to its former employee, Tammy Moore-Ransdell (“Moore-Ransdell”). Randolph County contends the Commission erred in concluding that Moore-Ransdell suffered a compensable injury because: (1) the injury came from a hazard or risk to which she was equally exposed in her normal nonem-ployment life; and (2) the accident at work was merely a triggering or precipitating factor and not the prevailing factor in causing her resulting medical condition and disability. Because the Commission’s determinations were supported by competent and substantial evidence and were not against the weight of the evidence, we affirm.
FACTUAL AND PROCEDURAL HISTORY
Moore-Ransdell, age fifty at the time of the accident, worked for Randolph County for ten years. As a “deeds clerk” in the Assessor’s office, Moore-Ransdell worked with “property records cards,” which were stored in filing cabinets. Her medical record as explained through her History and Physical at Boone Hospital Center indicates that she was “well with regard to her low back and lower extremities until Tuesday, February 26, 2008.”
On that day, Moore-Ransdell was updating the property records cards. One of the file folders she needed was in the back of the bottom file drawer, which she described as “extremely full” and “jammed up.” Because of defects in the filing system and the location of the file cabinet, Moore-Ransdell had to squat down and twist to remove a file from the tightly jammed bottom file drawer. She squatted down, reached into the back of the file drawer, and twisted her body as she tried to remove the file. She immediately experienced extreme pain in her low back. She could barely stand up and had difficulty *702 walking. Moore-Ransdell finished working the rest of the day but had too much low back pain the following day to get out of bed.
On March 1, 2008, Moore-Ransdell spoke to her supervisor about her injury. Her supervisor referred her to Kevin D. Komes, M.D., an orthopedic surgeon, for evaluation of her back pain for workers’ compensation purposes. The record indicates that Moore-Ransdell told Dr. Komes that she had low back pain, pain in her buttocks, and numbness in her entire left' leg, all of which began immediately after the file cabinet incident.
In April 2008, Moore-Ransdell filed a claim for workers’ compensation benefits. Randolph County denied her claim and refused to authorize further medical treatment.
Moore-Ransdell then sought medical treatment on her own. Her primary care physician referred her to Thomas R. Highland, M.D. Dr. Highland is a board-certified orthopedic surgeon and professor who had been in practice for fifteen years as of the time of the hearing. He specializes “in the treatment of the spine, including cervical, thoracic, and lumbar spine.” In examining Moore-Ransdell, Dr. Highland noted that she had diminished sensation in her left leg, buttock and back pain on the left, right leg pain, and tenderness in her low back. He initially referred her for physical therapy and pain management. She participated in physical therapy and received epidural steroid injections, nerve root injections, and facet blocks, but the pain worsened.
In July 2008, Moore-Ransdell underwent a lumbar discogram, which is a test that places a needle into the disc itself and injects a dye. According to Dr. Highland, the discogram showed degeneration in the discs at L3-4, L4-5, and L5-S1, which are the bottom three discs in the back. The discogram reproduced the pain that Moore-Ransdell had been having in her low back and down her leg. Dr. Highland recommended a three-level fusion of the discs. Moore-Ransdell did not have surgery at that time but attempted a more conservative treatment plan of further therapy, continued steroid injections and pain medication. Despite the additional pain management, she was unable to tolerate the pain.
In August 2010, Moore-Ransdell returned to Dr. Highland and reported that the steroid injections had given her only short-term relief and that she was still having back pain and numbness and tingling in her left leg. She was having difficulty living with the pain. Dr. Highland took an x-ray and noted that the three problematic discs had gotten worse, particularly at the L5-S1 level. An MRI showed further degeneration at L3^4 and L4-5, inflammatory changes at L5-S1, increasing bulging of the L3^4 disc, and increasing compression of the nerves at that level. In examining Moore-Ransdell, Dr. Highland noted that she was experiencing more loss of sensation in her left leg than she had in 2008 and that she had a slight weakness to the dorsiflexion of the left foot, which she did not have in 2008.[1]
Dr. Highland again recommended that Moore-Ransdell undergo surgery to treat her injury. In October 2010, he wrote in a letter that Moore-Ransdell had “continuing degeneration of all three segments in her back which were the source of her pain.” He stated, “I clearly feel that her continuing symptoms and her need for sur *703 gery are directly related to the work injury in February 2008.” He stated that his impression of Moore-Ransdell’s condition was: “(1) Acute lumbar strain in February 2008; (2) Internal disc disruption to L3-4, L4-5 and L-5-S1 secondary to work injury in February 2008; (3) Need for anterior lumbar fusion L3-4, L4-5 and L5-S1 secondary to work injury in February 2008.”
In November 2010, Moore-Ransdell underwent anterior fusion surgery. Moore-Ransdell’s back and leg pain improved post surgery.
On October 29, 2012, a hearing was held before an Administrative Law Judge (ALJ) on Moore-Ransdell’s workers’ compensation claim. During the hearing, Moore-Ransdell testified regarding the February 26, 2008 accident, the pain she felt afterwards, the treatment she received, and her condition after the anterior fusion surgery. Presently, she is unable to sit comfortably for more than forty-five to fifty minutes and to stand for more than thirty to forty minutes without having increasing pain in her low back and difficulty walking. She is prescribed Vicodin for pain, medication for nerve pain, muscle relaxers, and Cymbalta for depression.
In addition to her testimony and medical records, Moore-Ransdell offered Dr. Highland’s deposition testimony and disability rating report. On direct examination, Dr. Highland testified in part:
Q. All right. Let me ask you a hypothetical question, Doctor. If you would assume that the history that Ms. Rans-dell gave you when you first saw her was true and correct, that is, that she had back pain and leg pain after squatting down to get a file — something out of a file cabinet and twisting, and that she did that on about February 26th, 2008. And then you saw her — at the times that you saw her, do you have an opinion based on reasonable medical certainty as to whether or not that incident caused the conditions that you found when you examined her?
A. Yes.
Q. What is your opinion?
A. That the injury caused the condition that I treated her for.
Q. Okay. All right. And do you have an opinion as to whether or not that injury that she described is what necessitated this course of treatment and surgery that you have now performed?
A. Yes.
Q. And what is that opinion?
A. That it caused the injury and the problem for which we eventually did do the suryery.
Q. All right. And in your opinion, the surgery that was performed, was that the appropriate medical procedure to take in Ms. Ransdell[’s] case?
A. Yes.
On cross-examination, Dr. Highland agreed with defense counsel that Moore-Ransdell had a degenerative back before the February 26, 2008 accident. He also agreed that aging and normal activities of daily living can cause such degenerative problems to progress over time. Dr. Highland testified that, when he re-evaluated Moore-Ransdell in August 2010, he found that she had increasing stenosis and continuing degeneration of the three discs, which were the source of her pain. He agreed that, without her pre-existing disc degeneration, the lumbar strain she suffered at work on February 26, 2008, would not have necessarily required the three-level fusion procedure that he performed. Dr. Highland explained that the lumbar strain was an “injury to the muscles and ligaments, which is usually a more short-term issue” and that “the continued pain was from the deteriorating discs that she had” (emphasis added). Dr. Highland an *704 swered affirmatively when asked whether the work accident “triggered a pain from the underlying discs” and when asked whether he had to “address the underlying condition to address that pain.”
Dr. Highland also was asked on cross-examination about the factors that contributed to Moore-Ransdell’s medical condition. Dr. Highland testified that one factor was the underlying disc degenerative process, one was “possibly” her smoking, and the third was lumbar strain from the incident at work. Dr. Highland reiterated his medical opinion that “in this patient,” the lumbar strain “was the primary factor” of the overall condition. Dr. Highland also testified that the workplace incident caused the degeneration of the spine to “become symptomatic.”
On redirect examination, Dr. Highland was asked two questions:
Q. Your testimony before — the prevailing cause, I think, is the term we use now, of this condition that she had when she came to see you, that’s caused by this squatting down and twisting. Would that be your opinion?
A. Yes.
Q. All right. Would that be based on reasonable medical certainty?
A. Yes.
(Emphases added.)
Dr. Highland determined that she reached maximum medical improvement in November 2011 and that she should be permanently restricted from lifting over ten pounds, frequent bending, prolonged sitting, and prolonged standing. Dr. Highland opined that Moore-Ransdell was twenty-five percent permanently and partially disabled as a result of the February 2008 work injury.
At the hearing, Randolph County offered the deposition testimony and reports of Michael C. Chabot, D.O., an orthopedic spine surgeon who performed a medical evaluation on Moore-Ransdell in October 2008 on behalf of Randolph County. Dr. Chabot diagnosed Moore-Ransdell with back pain and a history of back strain.
The ALJ found that Moore-Ransdell sustained her burden of proof that the February 26, 2008 work-related accident caused her low back pain, subsequent surgery, and related medical treatment. Specifically, the ALJ found credible Moore-Ransdell’s testimony regarding how the accident occurred and the immediate and intense low back pain that resulted. The ALJ also cited Dr. Highland’s opinion that the February 26, 2008 accident caused Moore-Ransdell’s low back condition and need for treatment, including surgery. The ALJ examined the content of Dr. Cha-bot’s analysis and stated that she found Dr. Highland’s testimony more persuasive than Dr. Chabot’s.
The ALJ determined that Randolph County was liable to Moore-Rans-dell for medical expenses in the amount of $130,574.00, temporary total disability benefits for 100 weeks, and permanent partial disability benefits based upon twenty-five percent disability to the body as a whole.[2] Randolph County filed an application for review with the Commission. The Commission issued a final award affirming and incorporating the ALJ’s findings and decision. Randolph County appeals.[3]
*705 STANDARD OF REVIEW
This court will not disturb the award in a workers’ compensation case unless the Commission acted in excess of its powers, the award was procured by fraud, the facts found by the Commission do not support the award, or there was not sufficient competent evidence in the record to support the award. § 287.495.1.[4] We review questions of law de novo. Tillotson v. St. Joseph Med. Ctr., 347 S.W.3d 511, 516 (Mo.App.W.D.2011) (citation omitted). In deciding whether there is sufficient competent and substantial evidence to support the Commission’s award, we examine the evidence in the context of the whole record. Hampton v. Big Boy Steel Erection, 121 S.W.3d 220, 222-23 (Mo. banc 2003). We recognize that the Commission was free to believe or disbelieve any evidence, and we defer to the Commission’s credibility determinations. Clark v. Harts Auto Repair, 274 S.W.3d 612, 617 (Mo.App.W.D.2009) (citation omitted). As the claimant, Moore-Ransdell bore the burden of proving all essential elements of her workers’ compensation claim. Bond v. Site Line Surveying, 322 S.W.3d 165, 170 (Mo.App.W.D.2010) (citation omitted).
ANALYSIS
Randolph County’s two points on appeal allege error in the Commission’s finding that Moore-Ransdell suffered a compensa-ble injury. Section 287.020 governs the determination as to whether an employee has sustained a compensable injury from a work-related accident. Tillotson, 347 S.W.3d at 517. Section 287.020.2 defines an accident for workers’ compensation purposes:
The word “accident” as used in this chapter shall mean an unexpected traumatic event or unusual strain identifiable by time and place of occurrence and producing at the time objective symptoms of an injury caused by a specific event during a single work shift. An injury is not compensable because work was a triggering or precipitating factor.
Section 287.020.3(1) requires that the injury must have “arisen out of and in the course of employment.” For an injury by accident to be compensable, the accident must be “the prevailing factor in causing both the resulting medical condition and disability.” Id. “The prevailing factor” is the “primary factor, in relation to any other factor, causing both the resulting medical condition and disability.” Id. Section 287.020.3(2) further provides that an injury is deemed to arise out of and in the course of employment only if:
(a) It is reasonably apparent, upon consideration of all the circumstances, that the accident is the prevailing factor in causing the injury; and
(b) It does not come from a hazard or risk unrelated to the employment to which workers would have been equally exposed outside of and unrelated to the employment in normal nonemployment life.
These provisions are to be strictly construed, and the Commission is to weigh the evidence “impartially without giving the benefit of the doubt to any party.” § 287.800.
*706 Point One
Randolph County contends in its first point that the Commission acted in excess of its authority in compensating Moore-Ransdell because her injury did not arise out of her employment, in that her injury came from a hazard or risk to which she was equally exposed in normal nonemployment life. Specifically, Randolph County argues that the risk was simply the act of bending over, which was not unique to Moore-Ransdell’s job and was nothing more than a risk of everyday life to which she was equally exposed in her normal nonemployment life.
For an injury to arise out of employment under Section 287.020.3(2)(b), there must be “a causal connection between the injury at issue and the employee’s work activity.” Johme v. St. John’s Mercy Healthcare, 366 S.W.3d 504, 510 (Mo. banc 2012). A causal connection does not exist if the injury “merely happened to occur while working but work was not a prevailing factor” and the risk involved was one to which the worker would have been equally exposed in normal nonem-ployment life. Miller v. Mo. Highway & Transp. Comm’n, 287 S.W.3d 671, 674 (Mo. banc 2009). The injury must have occurred because the risk was due to some condition of the worker’s employment. Id. In other words, the employee must have been injured because she was at work and not simply while she was at work. Pope v. Gateway to West Harley Davidson, 404 S.W.3d 315, 320 (Mo.App.E.D.2012).
Applying these principles, the Supreme Court in Miller found that an employee whose knee popped while he was walking briskly on an even road surface to retrieve materials needed for his job.as a road crew worker failed to prove a causal connection between his work activity and his injury. Id. at 672-74. The court noted that the injury-causing risk — walking—was one to which the employee would have been equally exposed in normal nonemployment life and that “[n]othing about work” caused the employee’s knee to pop. Id. at 674. Thus, the court determined that, while the. employee’s injury may have arisen during the course of his employment because it occurred, while he was at work, it did not arise out of his employment under Section 287.020.3(2)(b). Id.
Similarly, in Johme, 366 S.W.3d 504, the Supreme Court determined that an employee who was injured in an office kitchen while making coffee when she turned and twisted her ankle, which caused her foot to fall off her high-heeled shoe, failed to show a causal connection between her work and her injury. The court noted that “the evidence did not link her act of making coffee as the cause of her injury and fall,” and the only connection her turning, twisting her ankle, and falling off her shoe had to her work activity was that it occurred while she was at work. Id. at 511. Because the employee’s risk of injury from turning, twisting her ankle, and falling off her shoe was a risk to which she would have been equally exposed in her normal nonemployment life, the court held that, under section 287.020.3(2)(b), her injury was not compensable. Id. at 511-12.
Randolph County argues that, like the risk of injury from the employee’s walking in Miller and from the employee’s turning, twisting her ankle, and falling off her shoe in Johme, the risk of injury from Moore-Ransdell’s bending over was one to which she was equally exposed outside of work. Randolph County mischaracterizes the risk in this case. The evidence shows that Moore-Ransdell did not suffer the low back injury after merely “bending over” at her place of employment. Rather, she credibly testified that, in attempting to perform her work activity of updating property cards, she squatted down to pull *707 out a lower file drawer that was “extremely full,” reached into the back of the file drawer, and twisted to remove the file from the tightly packed drawer. In doing so, she experienced immediate extreme pain in her lower back.
Unlike in Miller and Johme, the evidence here specifically linked Moore-Ransdell’s work activity as the cause of her low' back injury. She was required to update property cards as one of her primary job duties. Due to Randolph County’s storing the property cards in full file drawers, Moore-Ransdell had to squat down, reach into the back of a file drawer, and twist to remove the file containing the property card that she needed to update. Moore-Ransdell injured her back because she was at work, not merely while she was at work. See Pope, 404 S.W.3d at 320. Her risk of injury from squatting down, reaching into the back of a file drawer, and twisting to remove files from full file drawers was a risk to which she would not have been equally exposed in her normal non-employment life.
Point One is denied.
Point Two
In Point Two, Randolph County contends that the Commission’s determination that Moore-Ransdell suffered a compensa-ble injury was not supported by competent and substantial evidence and was against the weight of the evidence because the medical evidence showed that her work-related accident was merely a triggering or precipitating factor and not the prevailing factor in causing her medical condition and disability.
“Medical causation, which is not within common knowledge or experience, must be established by scientific or medical evidence showing the relationship between the complained of condition and the asserted cause.” Bond, 322 S.W.3d at 170 (internal quotation marks and citations omitted). See also T.H. v. Sonic Drive In of High Ridge, 388 S.W.3d 585, 591 (Mo.App.E.D.2012) (affirming Commission’s determination in light of the standard of review that medical testimony was sufficient competent evidence of medical causation where that testimony and claimant’s testimony supported determination that sexual assault was prevailing factor in stress and depression); Johnson v. Indiana W. Exp. Inc., 281 S.W.3d 885, 892 (Mo.App.S.D.2009) (“When the right to compensation depends on the acceptance of one of two competing medical theories, the issue is one of fact and the commission’s finding will not be disturbed unless the commission acted unreasonably in accepting testimony that was not substantial or decided the issue contrary to the overwhelming weight of the evidence.”). The weight ascribed to a medical expert’s opinion is a matter within the Commission’s discretion. Bond, 322 S.W.3d at 170 (citation omitted). “[W]here the right to compensation depends on which of two medical theories should be accepted, the issue is peculiarly for the Commission’s determination.” Id. (internal quotation marks and citations omitted). Moreover, “[i]n determining compensability and disability, where inconsistent or conflicting medical opinions exist, objective medical findings shall prevail over subjective medical findings. Objective medical findings are those findings demonstrable on physical examination or by appropriate tests or diagnostic procedures.” § 287.190.6(2). However, “[djeterminations with regard to causation ... are questions of fact to be ruled upon by the Commission, and the reviewing court may not substitute its judgment on the weight of the evidence or on the credibility of witnesses for that of the Commission.” Spencer v. Sac Osage Elec. Co-op. *708 Inc., 302 S.W.3d 792, 800 (Mo.App.W.D.2010).
In this case, the Commission relied upon Dr. Highland’s testimony that the work accident caused Moore-Ransdell’s low back condition and need for treatment, including surgery. While the Commission noted Dr. Chabot’s conflicting opinion as to causation, it expressly found Dr. Highland’s testimony more persuasive than Dr. Chabot’s. It was the Commission’s prerogative to discount Dr. Chabot’s testimony in favor of Dr. Highland’s, and we defer to its decision in that respect. Hornbeck v. Spectra Painting, Inc., 870 S.W.3d 624, 632 (Mo. banc 2012); Bond, 322 S.W.3d at 169.[5]
The issue, then, is whether Dr. Highland’s testimony, when examined in the context of the whole record as the Supreme Court prescribed in Hampton, constituted competent and substantial evidence to support the Commission’s determination that the injury Moore-Ransdell suffered in the work accident was the primary factor in causing her low back condition and permanent partial disability. As the Commission noted in its award, Dr. Highland testified that the February 26, 2008 accident “caused the condition that [he] treated her for”; necessitated the course of treatment that he provided, including the anterior fusion surgery; was “the primary factor” that contributed to “[t]he overall condition of her lumbar spine”; and was the “prevailing cause” ... “of this condition that she had when she came to see [him].”
The record contains sufficient competent evidence to support the Commission’s determination that Moore-Ransdell’s workplace accident was the “prevailing” or “primary” factor that caused her injuries. § 287.020.3(1) (As noted above, “‘[t]he prevailing factor’ ” is defined to be the primary factor, in relation to any other factor, causing both the resulting medical condition and disability.) To begin, the medical history indicates that Moore-Ransdell was “well” before her injury as to “her low back and lower extremities” and that her problems were new as of her first visit to Dr. Komes soon after the work injury. Additionally, the Commission expressly found that Moore-Ransdell “testified credibly to the squatting and twisting necessitated in pulling a file out of a low, full file drawer in the course of her employment for the Randolph County assessor’s office and the immediate and intense low back pain resulting from that injury.” Further, the Commission also expressly determined that Dr. Highland was “more persuasive” than Dr. Chabot, and the Commission stated that it based its award on the testimony of Moore-Ransdell and Dr. Highland. The Commission therefore found credible Dr. Highland’s testimony that the lumbar strain from Moore-Rans-dell’s workplace accident “was the primary factor” in her overall condition.' Smoking was another “possible” factor, but the workplace injury was the prevailing medical cause of her condition. Finally, the question presented is whether the workplace accident was the prevailing factor in Moore-Ransdell’s injury, not whether the compensable injury is the prevailing factor in her overall resultant medical treatment. Tillotson, 347 S.W.3d at 518.
As noted above, Dr. Highland’s key diagnoses were these: “(1) Acute lumbar strain in February 2008; (2) Internal disc disruption L3-4, L4-5 and L5-S1 secondary to work injury in February 2008; (3) *709 Status post anterior and posterior fusion L3-4, L4-5 and L5-S1 secondary to work injury in February 2008.” Dr. Highland’s testimony explains the diagnoses of the lumbar strain as well as the two conditions related to the discs, both of which are secondary to the work injury. Dr. Highland maintained throughout his care of Moore-Ransdell that her continuing symptoms and need for surgery were due to the work injury. His board-certified medical opinion was that the secondary diagnoses were not merely precipitated by that work accident, but rather that the squatting down and twisting resulted in lumbar strain that “was the primary factor” of the overall condition. Hence, Dr. Highland’s testimony and diagnoses, once found credible by the Commission, leave little room to question the foundation of the Commission’s decision. As noted above, “determinations with regard to causation ... are questions of fact to be ruled upon by the Commission, and the reviewing court may not substitute its judgment on the weight of the evidence or on the credibility of witnesses for that of the Commission.” Spencer, 302 S.W.3d at 800 (citation omitted). The Commission weighed competing medical explanations regarding the causation of Moore-Ransdell’s injury and rejected the theory posited by Dr. Chabot.
In reaching the opposite conclusion, the Dissent attempts to characterize the degenerative disc issues as apparently inevitable in spite of the workplace strain or that the disability determination is based only on the continuing pain Moore-Ransdell suffers rather than on the workplace injury. That analysis simply does not bear out upon a full review of Dr. Highland’s expert testimony, the sole expert deemed persuasive. Certainly there was evidence from which the Commission could have determined that the workplace injury merely “triggered” or “precipitated” the condition rather than being the “primary” or “prevailing” factor.[6] In any event, however, our standard of review renders that hypothetical determination moot under these facts. Our job is to review the record to determine whether there is sufficient competent evidence to support the decision of the Commission, not to search through the record to see whether there is any evidence which, if found credible, may undermine the Commission’s finding.
Notably, the Dissent excises incidental testimony that an MRI did not indicate that the work accident caused Moore-Ransdell to suffer a “fracture or anything acute like that.” But an extended quote from the record provides helpful context for this comment:
Q: And just kind of quickly, I looked through the operative note and the MRI film reports and all that. There wasn’t a piece of a disc that had been — come loose and had to be removed or a fracture or anything acute like that that you specifically addressed, was there?
A: No.
*710 That there was nothing akin to a loosened piece of disc or a fracture is not the. same as saying that there was not “anything acute.” In fact, Dr. Highland diagnosed Moore-Ransdell in part with an “acute lumbar strain.” Regardless, that there was no fracture or injury “like that” does not yield the conclusion that the work accident necessarily could not be the prevailing cause of the injury. Nor should we conclude that the work accident was not the prevailing cause of the injury based on incidental testimony that the source of the pain was disc degeneration or that the strain caused the degeneration to become symptomatic or that lumbar strain was an “injury to the muscles and ligaments, which is usually a more short-term issue” (emphasis added). While it is true that the statute requires more than a simple aggravation of a preexisting condition, it is also true that the record reflects Dr. Highland’s medical opinion that “in this patient,” the lumbar strain “was the primary factor” of the overall condition. Dr. Highland’s expert medical opinion may leave open the possibility that a lumbar strain in another patient would not necessarily be the prevailing cause of a similar medical condition, but surmising what might hypothetically be the case in another patient ignores what Dr. Highland testified about in “this patient.” There is no conflict in Dr. Highland’s testimony, and even if there were, the Commission is free to believe some, all or none of any witness’s testimony, so the minor portions which the dissent argues are in conflict may have been found not to be credible. Additionally, our standard of review is clear that “it is irrelevant that there is supportive evidence for the contrary finding.” Hornbeck, 370 S.W.3d at 629. The record as a whole, read in proper context, is clear that Dr. Highland was not merely using conclu-sory “magic words” in testifying that the workplace accident was the “prevailing factor” in Moore-Ransdell’s medical condition.
Point Two is denied.
CONCLUSION
The Commission’s final award is affirmed.
HARDWICK, Judge, joins in the majority opinion.
AHUJA, Judge, dissents in separate opinion.

. Dr. Highland explained that "dorsiflexion” is the act of raising one’s toes toward the ceiling.

. Moore-Ransdell had also sought payment for future medical expenses. The Commission found that she failed to sustain her burden of proof with regard to her need for future medical treatment. Moore-Ransdell does not appeal this finding.

. Moore-Ransdell asks us to dismiss both of Randolph County’s points on appeal because of briefing deficiencies. While we have discretion to dismiss an appeal based upon briefing deficiencies, we usually do not exercise such discretion "unless the deficiency im *705 pedes disposition on the merits." Maskill v. Cummins, 397 S.W.3d 27, 31 (Mo.App.2013) (internal quotation marks and citation omitted). This is because we prefer to decide a case on its merits. Id. Despite its deficiencies, we are able to ascertain Randolph County's arguments from its brief; therefore, we elect to review Randolph County’s claims to provide a determination on the merits.

. All statutory references are to the Revised Statutes of Missouri 2000 as currently supplemented, unless otherwise indicated.

. Randolph County also asserts that the Commission erred in finding that Moore-Ransdell testified credibly about the onset and extent of her low back pain. Again, we defer to the Commission’s credibility determinations. Clark, 274 S.W.3d at 617.

. In fact, as the Dissent points out, Dr. Highland responded affirmatively when defense counsel asked him whether it was his opinion that the "incident then triggered a pain from the underlying discs.” Defense counsel asked several questions using the term "trigger.” While it is true that "but for” causation alone is not sufficient to establish compensability under the Act because a claimant must establish that the injury was the "prevailing factor,” see Dissenting Opinion at n. 3, an action can be the "but for” cause of a medical condition or the "trigger” of a medical condition and also be the “prevailing factor,” even though as a matter of law neither the "but for” cause nor a "trigger” alone mandates coverage under the Act. Additionally, Dr. Highland's testimony establishes necessary medical treatment "as may reasonably be required after the injury,” which is a lower standard than the prevailing factor threshold. Tillotson, 347 S.W.3d at 518; § 287.140.1.