DON E. BURRELL, P.J.
Vernis Farmer ("Claimant") appeals the Final Award Denying Compensation ("final award") issued by the Labor and Industrial Relations Commission ("the Commission"). The final award upheld a decision of an Administrative Law Judge ("ALJ") that denied Claimant benefits from the Treasurer of the State of Missouri, Custodian of the Second Injury Fund (the "Fund"). In two points on appeal, Claimant asserts the Commission erred in admitting two Fund exhibits offered as evidence of Claimant's prior convictions for social security fraud. Claimant asserts that without those exhibits, the award was "not supported by competent and substantial evidence[.]" Because the challenged exhibits were cumulative to Claimant's admission that he had committed such fraud, we find no reversible error and affirm.
Applicable Principles of Review
The Commission adopted the findings and conclusions of the ALJ, which we review as if made by the Commission. Angus v. Second Injury Fund , 328 S.W.3d 294, 297 (Mo. App. W.D. 2010) (citing ABB Power T & D Co. v. Kempker , 236 S.W.3d 43, 48 (Mo. App. W.D. 2007) ). We will not overturn the Commission's decision on the admissibility of evidence absent an abuse of discretion. Calvert v. Treasurer of State, Custodian of Second Injury Fund , 417 S.W.3d 299, 307 (Mo. App. S.D. 2013) (citing Garrett v. Treasurer of State, Custodian for Second Injury Fund , 215 S.W.3d 244, 249 (Mo. App. S.D. 2007) ).
All final decisions, findings, rules and orders on [sic] any administrative officer or body existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights, shall be subject to direct review by the courts as provided by law; and such review shall include the determination whether the same are authorized by law, and in cases in which a hearing is required by law, whether the same are supported by competent and substantial evidence upon the whole record.
Mo. Const. art. V, section 18 (emphasis added).
Section 287.495[1] provides:
*231 Upon appeal, no additional evidence shall be heard and, in the absence of fraud, the findings of fact made by the commission within its powers shall be conclusive and binding. The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:
(1) That the commission acted without or in excess of its powers;
(2) That the award was procured by fraud;
(3) That the facts found by the commission do not support the award ;
(4) That there was not sufficient competent evidence in the record to warrant the making of the award .
2. The provisions of this section shall apply to all disputes based on claims arising on or after August 13, 1980.
(Emphasis added.)
Perhaps because the word "award" appears so prominently (but not exclusively) in section 287.495 as describing final commission decisions, the division and commission typically title their ultimate decision an "award" whether benefits are granted or denied. This ubiquity is unfortunate because it heightens certain logical difficulties we note and address later in this opinion.
In any event, our appellate courts have interpreted the above-noted constitutional and statutory provisions as producing the following standard of review:
In order to determine whether the award is supported by sufficient competent and substantial evidence, i.e., is contrary to the overwhelming weight of the evidence, we examine the evidence in the context of the whole record, viewing the evidence objectively. Hampton v. Big Boy Steel Erection, 121 S.W.3d 220, 222-23 (Mo. banc 2003). In the absence of fraud, however, the Commission's findings of fact are "conclusive and binding." § 287.495.1. Thus, we "defer to the commission on issues of fact, the credibility of the witnesses, and the weight given to conflicting evidence." Treasurer of State-Custodian of Second Injury Fund v. Witte, 414 S.W.3d 455, 460 (Mo. banc 2013).
Winingear v. Treasurer of State-Custodian 2nd Injury Fund , 474 S.W.3d 203, 207 (Mo. App. W.D. 2015) (emphasis added).
While this standard of review works perfectly well when the "award" being appealed is a grant of benefits, we find it extremely difficult to apply our high court's directive in Hampton to "examine the whole record to determine if it contains sufficient competent and substantial evidence to support the award" in cases involving a final decision that denies the claimant's request for benefits, i.e., what might more accurately be described as a "non -award." 121 S.W.3d at 222-23.
In reviewing final decisions adverse to the claimant - the party with the burden of persuasion - the standard of review set forth in Hampton seems, frankly, nonsensical, and we believe it should be reconsidered for the reasons contained in our high court's more recent decision in White v. Director of Revenue , 321 S.W.3d 298, 305 (Mo. banc 2010) (stating, "When the burden of proof is placed on a party for a claim that is denied, the trier of fact has the right to believe or disbelieve that party's uncontradicted or uncontroverted evidence. If the trier of fact does not believe the evidence of the party bearing the burden, it properly can find for the other party" (internal citation omitted) ). However, both the majority and dissenting opinions in Malam v. State, Dep't of Corr. , 492 S.W.3d 926, 928, 930 (Mo. banc 2016), purported to apply the Hampton standard in *232 their differing analyses of the Commission's affirmance of a decision denying compensation, so we will attempt to apply it here to the best of our ability.
The Evidence
At the time of the final hearing in this case, Claimant was 58 years old. He had begun working as chief of police for the city of Hayti Heights ("Employer") in 2001. As relevant to this case, Claimant alleged to have sustained two separate injuries while working for Employer: (1) an injury to his cervical spine at levels C3 - C7 incurred on December 3, 2007 while breaking up a fight between two individuals; and (2) stress and psychological problems beginning on December 26, 2007 from working long hours. Claimant settled with Employer on both claims: 12.5% of the body as a whole for the alleged injury to his neck and 9.3% of the body as a whole for the stress and psychological issues.
Claimant's assertion of Fund liability is that "he is [permanently and totally disabled ("PTD") ] from a combination of the December 3, 2007 accident and injury and pre-existing conditions. The stress in the later claim is attributable also to the December 3, 2007 claim[.]"
Claimant's testimony regarding his prior history of education, work, and injuries was as follows. Claimant graduated from the military police academy in Alabama, the Police Science Institute in Pennsylvania, the Police Academy in Cape Girardeau, Missouri, and the Missouri Highway Patrol radar instructor's school. He served in the military from 1976 until 1979, and again from 1980 through 1984. Claimant also served in the National Guard for one year, and he received an honorable discharge.
In 1996, Claimant was working as a security officer for a Chicago hotel when he fell down about fifteen steps and injured his neck and lower back. Claimant was then unemployed until he went to work in 1998 for a Memphis corporation as "custom protection." Claimant resigned from this job after approximately two months due to "dizzy spells and his body hurting." Claimant applied for and received Social Security Disability benefits in 1998.
In 2002, while working as police chief for Employer, Claimant fell over backward in his chair and injured his neck again.
In 2003, the Social Security Administration ("Social Security") learned that Claimant had been working for Employer, and it determined that Claimant owed $15,000 in social security disability benefits he had received while engaged in that employment. Social Security stopped paying Claimant benefits in 2004. One month later, Claimant reported that he had stopped working due to his medical condition and requested an expedited reinstatement of his benefits, which Social Security granted subject to a reduction for the prior, overpaid amounts.
In 2004, a Veterans Administration ("VA") doctor indicated that Claimant might be looking for disability for his neck pain, but the doctor advised that he could not "write any disability regarding his neck pain[.]"
In 2005, while still working for Employer, Claimant alleged that he fell down during a pursuit and injured his knees. Claimant received treatment in the emergency room, and he was diagnosed with bilateral contusions and an abrasion of his left knee.
On or about December 3, 2007, the date of one of two underlying claims at issue in this case, Claimant alleged that he injured his neck while working for Employer when he tried to break up a fight between two individuals. Claimant described the individuals as applying "[e]xtreme force pushing *233 against my arms, shoulder, and hands causing [e]xtreme pressure and pain to radiate[ ] in my neck and back area." Claimant testified that he could not remember whether he received any medical treatment for this injury until he presented to a VA hospital on December 20, 2007, claiming neck and back pain not associated with any recent injury. The first mention in the medical records of Claimant's neck injury due to breaking up the fight was on February 25, 2008. The doctor's notes from that visit indicate that no neurological deficit was apparent and that no cervical surgery was needed at that time.
On December 26, 2007, Claimant was admitted to the hospital for several days for anxiety, depression, and adjustment disorder. Claimant alleged that he suffered mental stress and psychological issues as a result of his employment with Employer, with an alleged onset date of December 26, 2007.
In 2009, Social Security received an anonymous tip that Claimant was underreporting his earnings, and that tip was subsequently confirmed by an investigation. Claimant was criminally indicted for that conduct, and he was ultimately found guilty of one count of making a false statement to obtain social security benefits and two counts of knowingly concealing that he earned wages above the income threshold for disability payments. See 42 U.S.C. section 408(a)(3)-(4) (2011).
Claimant's medical records evidenced several injuries in 2009, around 22 months after the alleged onset date of the injuries at issue in this case. In October 2009, Claimant reported that he was injured inside the federal courthouse when he was hit by an elevator door. Claimant reported multiple problems after this incident, including not being able to sleep, and a resulting necessity to use a cane for ambulation. Claimant also reported being involved in a 2009 motor vehicle accident. Finally, Claimant stated that he fell in his bathroom around this time and has from that time been using a wheelchair for "ambulation."
Claimant testified that he last worked for Employer in January of 2009. VA records indicated that Claimant reported in November of 2009 that he was on "paid leave" from Employer.
Claimant saw Dr. Volarich for an independent medical exam ("IME") in connection with this case on December 3, 2009, exactly two years after the date of the alleged neck injury. Claimant used a cane at the time of the IME. Dr. Volarich assessed a 15% permanent partial disability ("PPD") to the cervical spine due to the December 3, 2007 injury, 25% PPD to the cervical spine due to preexisting chronic cervical syndrome, 25% PPD to the lower back due to chronic lumbar syndrome, and 20% PPD to each knee due to preexisting patellofemoral syndrome. Dr. Volarich deferred any assessment of psychiatric disability to a psychiatrist, and he also recommended that Claimant be evaluated by a vocational expert to determine if he could return to work. If a vocational expert determined that Claimant could not return to work, then Dr. Volarich believed Claimant was PTD as a result of his December 3, 2007 injury, in combination with preexisting medical illnesses, including psychiatric illness.
During cross-examination, Dr. Volarich admitted that he had not reviewed any records from the VA hospital in St. Louis in which Claimant described having sustained an accident in October of 2009 to his neck, thoracic spine, and leg. Claimant also did not report to Dr. Volarich that he had started using the cane and a cervical collar after this October 2009 incident, as indicated in the St. Louis VA hospital records. Dr. Volarich admitted that he would need *234 to see those October 2009 records and reexamine Claimant in order "to see if that particular incident caused a permanent increase in symptoms[.]"
Licensed psychologist Dr. Jerrell Driver ("Dr. Driver") examined Claimant on August 9th and 19th in 2013 in connection with the psychological component of Claimant's claim. Claimant arranged for the examination himself, and he provided Dr. Driver with the records for the evaluation, which amounted to some medical records from the VA hospital, an IME, and several progress notes. Dr. Driver testified that it was difficult to obtain a history from Claimant as he was inconsistent, and his story was confusing. Dr. Driver testified at length regarding inconsistencies in Claimant's story with respect to his injuries, the presence and nature of symptoms, and Claimant's prior criminal history. Dr. Driver ultimately provided an Axis II diagnosis for Claimant of "personality disorder not otherwise specified."
Susan Shea ("Ms. Shea"), a certified rehabilitation counselor, performed a vocational evaluation of Claimant and concluded that due to a "combination of that injury from '07 and from his preexisting conditions[,]" Claimant was not employable in the open labor market and a reasonable employer would not hire Claimant on a full-time basis.
The Fund offered into evidence exhibits B and C. Exhibit B was a certified copy of the decision from the Eighth Circuit Court of Appeals which affirmed Claimant's convictions for social security fraud, and Exhibit C was a certified copy of Claimant's judgment of conviction and sentence in the district court. Claimant objected that the records were irrelevant and prejudicial because Claimant had already admitted to having been convicted of social security fraud. The Fund argued that Missouri statute provided for the admission of certified records of any judicial proceeding in a court of the United States or the State of Missouri. In addition, the Fund claimed the records were relevant to credibility, veracity, and "would also be pertinent based on the disability that is being claimed in this case." The ALJ overruled Claimant's objections and admitted exhibits B and C into evidence.
In its decision, the ALJ denied compensability for Claimant's neck injury because it found that Claimant had not met his burden of proof that work was the prevailing factor in causing the injuries, and Claimant had not met his burden of proving that his injury was causally related to a work injury that occurred on or about December 3, 2007. The ALJ did not credit Dr. Volarich's opinion regarding causation because Dr. Volarich "was relying on the reported symptoms and history as provided by [Claimant], which has been established as not trustworthy."
Regarding medical causation for his alleged psychological injury, the ALJ denied the claim because it found that Claimant had not met his burden of proof that work was the prevailing factor in causing his alleged psychological issues, and he had not met his burden of proving that his alleged psychological injury was the result of an occupational disease. The ALJ did not credit Dr. Driver's testimony, in part, because Dr. Driver "was unable to obtain a clear history of events and was unable to determine what, if anything, was contributing to [Claimant's] mental condition." Based on the lack of proof of medical causation, the ALJ deemed as moot all other issues in the case.
Claimant timely appealed to the Commission, which affirmed the decision of the ALJ and issued a short, supplemental opinion holding that exhibits B and C were properly admitted because Claimant's "responses to questioning relating to prior *235 felonies was equivocal enough to warrant [their] admission[.]" This appeal timely followed the entry of the final award.
Analysis
Both of Claimant's points argue that the Commission erred in admitting certified court copies of documents (exhibits B and C) relating to Claimant's convictions for social security fraud on the grounds that they were not relevant, and they were not admissible to impeach his testimony because Claimant "freely admitted" to being convicted of the crimes they documented. Because both points address the allegedly erroneous admission of exhibits B and C, we address them together. Claimant argues that their admission was outcome-determinative in that the Commission relied upon the exhibits in the final award. We disagree.
To be compensable, Claimant's injury must have "arisen out of and in the course of employment." Randolph Cty. v. Moore-Ransdell , 446 S.W.3d 699, 705 (Mo. App. W.D. 2014) (quoting section 287.020.3(1), RSMo Cum. Supp. 2006)). Furthermore, "the accident must be 'the prevailing factor in causing both the resulting medical condition and disability.' " Id. (quoting section 287.020.3(1) ). "The claimant in a workers' compensation case has the burden to prove all essential elements of h[is] claims, including a causal connection between the injury and the job." Pruett v. Federal Mogul Corp. , 365 S.W.3d 296, 304-05 (Mo. App. S.D. 2012) (quoting Angus , 328 S.W.3d at 299 ).
Claimant complains that the issues at his hearing "against the Fund were whether or not he sustained an accident that medically caused disability as applied to the [F]und. The issues are not the underlying facts or outcome of his [f]ederal conviction. Given that the evidence pertains to the irrelevant issues, it should be found prejudicial."
Claimant's argument fails to appreciate that his credibility was crucial in resolving his claim. It is within the sole province of the Commission "to make such [credibility] findings[,] and we defer to such credibility determinations[.]" Pruett , 365 S.W.3d at 305. Further, "[t]he Commission is free to believe or disbelieve any evidence, and we defer to the Commission's credibility determinations and to the weight it accords testimony and evidence." Treasurer of State-Custodian of Second Injury Fund v. Cook , 323 S.W.3d 105, 110 (Mo. App. W.D. 2010).
Claimant's argument regarding the effect of the challenged exhibits is that
[t]he award was not supported by competent and substantial evidence because the [ALJ] relied upon inadmissible evidence in making her credibility determinations. The issue in this case ... deals with a workers' compensation accident that has nothing to do with a federal conviction for not reporting income to social security.
If substantial competent evidence supports an award, the erroneous admission of incompetent evidence does not warrant setting it aside. Vickery v. ACF Indus., Inc. , 454 S.W.2d 620, 623 (Mo. App. St. L.D. 1970) ; Jackson v. Curtiss-Wright Airplane Co. , 334 Mo. 805, 813, 68 S.W.2d 715, 719 (Mo. 1933) ; Jackson v. H.D. Lee Co. , 772 S.W.2d 742, 749 (Mo. App. S.D. 1989), superseded by statute on other grounds as stated in Kasl v. Bristol Care, Inc. , 984 S.W.2d 852, 853, 855 (Mo. banc 1999). Here, assuming, arguendo , that exhibits B and C were improperly admitted, Claimant has not demonstrated that he was prejudiced as a result of their admission. T.H. v. Sonic Drive In of High Ridge , 388 S.W.3d 585, 592 (Mo. App. E.D. 2012). Claimant's admission to the crimes *236 that they documented - making a false statement to obtain social security benefits and knowingly concealing wages above the income threshold for disability payments - supported the Commission's determination that Claimant was not a credible witness. See id. (citing section 491.050, which allows prior criminal convictions to affect credibility in a civil or criminal case and noting that appellate courts must defer to the Commission's credibility determinations).
As a logical extension of that credibility determination, the Commission did not credit Dr. Volarich's medical opinion because he "was relying on the reported symptoms and history as provided by [Claimant], which has been established as not trustworthy."[2] Dr. Volarich acknowledged that he based his findings, in part, on the information provided by Claimant, and he acknowledged that Claimant had not provided all of the information relevant to his claim. Dr. Volarich was not aware of Claimant's subsequent injuries, one of which injured his neck only two months prior to Dr. Volarich's IME. Dr. Volarich further testified that he would need to re-examine Claimant in light of that new information, and he confirmed that no such re-evaluation was conducted.
Dr. Driver, the licensed psychologist who performed an IME in connection with Claimant's claim of psychological injury (and who received records directly from Claimant), opined that the results of Claimant's Minnesota Multiphasic Personality Inventory ("MMPI") were invalid. According to Dr. Driver, Claimant reported "psychotic symptoms of such a level as to be debilitating." Dr. Driver noted multiple inconsistencies between Claimant's reporting and the information contained within the VA records.
The Commission did not appear to afford any weight to the testimony of Ms. Shea because, while she opined that Claimant was unable to secure and maintain employment in the open labor market as a result of the December 2007 injury and Claimant's preexisting injuries, she was not clear about which of the two December 2007 injuries she was referencing.
As earlier noted, we must defer to the Commission on what weight to accord expert testimony on medical causation, and it may accept or reject medical evidence. Patterson v. Central Freight Lines , 452 S.W.3d 759, 764 (Mo. App. E.D. 2015) ; Hawthorne v. Lester E. Cox Med. Ctr. , 165 S.W.3d 587, 595 (Mo. App. S.D. 2005). Here, the Commission exercised its discretion to reject Claimant's uncontradicted expert testimony as unreliable because it was based upon information provided by Claimant, an unreliable historian. Cf. Angus , 328 S.W.3d at 303 (Commission's decision is not supported by competent and substantial evidence where it expressly finds claimant to be a credible witness and fails to articulate any reasonable basis for disregarding the uncontradicted expert medical opinion before it).
Claimant had the burden to prove all essential elements of his claim, including a causal connection between the accident and the injury. Pruett , 365 S.W.3d at 304-05 (internal quotation omitted); Silman v. William Montgomery & Assoc. , 891 S.W.2d 173, 175-76 (Mo. App. E.D. 1995) (overruled on other grounds by Hampton , 121 S.W.3d at 228 ). Having no credible expert testimony in support of his claim, *237 Claimant has failed to convince us that the Commission's decision denying his claim was not supported by substantial and competent evidence on the whole record.
Claimant's points are denied, and the Commission's "award" denying benefits is affirmed.
NANCY STEFFEN RAHMEYER, J. - CONCURS
GARY W. LYNCH, J. - CONCURS

Unless otherwise indicated, all statutory references are to RSMo 2000, as amended through the date of Claimant's injuries. Elsworth v. Wayne Cty. , 547 S.W.3d 599, 600 n.1 (Mo. App. S.D. 2018).

The outcome in this case was heavily dependent upon Claimant as a reliable historian; it is not a case in which Claimant asserts that the Commission ignored objective medical findings which are "those findings demonstrable on physical examination or by appropriate tests or diagnostic procedures." See Moore-Ransdell , 446 S.W.3d at 707 (quoting section 287.190.6(2), RSMo Cum. Supp. 2006)).