**UNITED STATES of America, Plaintiff,**

v.

**1,014.16 ACRES OF LAND, MORE OR LESS, SITUATE IN VERNON COUNTY, STATE OF MISSOURI; and Timberhill-Riverbend, Inc., et al., Defendants.**

**and**

**UNITED STATES of America, Plaintiff,**

v.

**10.02 ACRES OF LAND, MORE OR LESS, AND PARCEL NO. 1, SITUATE IN VERNON COUNTY, STATE OF MISSOURI; and H.A. Kelso, et al., Defendants.**

Nos. 78–5080–CV–SW–1,
79–5027–CV–SW–1.

United States District Court,
W.D. Missouri, W.D.

March 10, 1983.

## MEMORANDUM OPINION AND ORDER

JOHN W. OLIVER, Senior District Judge.

### I.

These land condemnation actions pend on the government's objections and the defendants' objections to the Report of the Land Condemnation Commission. After careful consideration we find and conclude that the objections are without merit and that the Report of the Commission in these cases should be confirmed and adopted.

### II.

The government objects to the Commission's finding that interest payable on the deficiency shall exceed the six percent per annum rate set out in the Declaration of Taking Act, 40 U.S.C. § 258a. We have fully considered the government's contentions and overruled identical objections in *United States v. Katherine R. Johnson, et al.*, No. 76–CV–250–W–1 (unpublished memorandum opinion, June 24, 1981). We incorporate our discussion of the interest rate question in Section III of that opinion herein by reference. Plaintiff's objections shall be overruled.

### III.

The defendants make 17 separate objections to the Report. These objections may be categorized into three general areas and will accordingly be discussed in separate sections.

### A.

Defendants object to the Report stating that the Commission, by accepting and relying on certain hydrology data as to the frequency and duration of flooding on the subject tracts, as well as testimony concerning the purpose and operation of the Harry S. Truman Dam and Reservoir, impermissibly decreased the extent of the taking as described in the complaint and declaration.[1]

Vernon A. Poschel, Asst. U.S. Atty., Kansas City, Mo., for plaintiff.

S. Preston Williams, Thomas E. Barzee, Jr., North Kansas City, Mo., Joseph R. Borich, III, Laurence R. Tucker, Kansas City, Mo., for defendants.

---

1. This argument relates to defendants' objections Nos. 1(a)–1(h), 2, 5, and 9.

Defendants cite a number of authorities for the general proposition that the nature and extent of the interest must be specified in the complaint and declaration of taking and may not be increased or decreased by the courts. *See, e.g., Berman v. Parker,* 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954); and *United States v. 3,317.39 Acres of Land,* 443 F.2d 104 (8th Cir.1971). And that the landowners have the right to be awarded compensation for damages which can be reasonably anticipated from the maximum use of the easement sought. *2,953.15 Acres of Land v. United States,* 350 F.2d 356 (5th Cir.1965); *State ex rel. State Highway Commission v. Blue Ridge Baptist Temple, Inc.,* 591 S.W.2d 248, 250 (Mo.App.1979); *Missouri Public Service Co. v. Argenbright,* 457 S.W.2d 777 (Mo.1970); *Shell Pipe Line Corporation v. Woolfolk,* 331 Mo. 410, 53 S.W.2d 917 (Mo.1932).

Plaintiff, in its suggestions in opposition to defendants' objections, states that the Court, in determining damages for flooding or a flowage easement, must refer to the statutes of Congress authorizing the project in addition to the complaint and declaration of taking. In support of this proposition, the government cites *Karlson v. United States,* 82 F.2d 330 (8th Cir.1936).

In *Karlson,* the government brought a condemnation proceeding and, through an amended petition, sought to acquire "the full, complete and perpetual right, power and privilege to raise and regulate the levels of the Lake of the Woods in accordance with the aforesaid Treaty [Treaty of 1925] and in consequence of which to overflow and otherwise affect the lands hereinafter described by such raising and regulation of said waters in accordance with said Treaty, be the consequences thereof to said tracts what they may." 82 F.2d at 331. The landowners contended that the government had acquired an easement to continuously flood the landowners' land up to elevation 1,062.5 (the highest level authorized by the Treaty) so that the full exercise of the right acquired would deprive them of all right to valuable uses of the land. The landowners thus claimed that they were entitled to compensation for the full value of the land.

The government did not deny that it was obligated to pay compensation for the full right it acquired but it denied that it had acquired any right to continuously flood the lands up to elevation 1,062.5.

The *Karlson* court held that, in determining the extent of the taking, recourse must be had to the Act of Congress directing the condemnation. And, since the Act did not specifically define the nature and extent of the flowage easement that was to be acquired, it was also necessary to refer to the Treaty of 1925 between the United States and Canada which disclosed the scheme of regulation of the lake levels adopted by the two governments. Furthermore, the Court noted that there is no way to tell from the Act or the Treaty what the probable effect the imposition of the easement would have upon the lands. Thus, it was necessary to consider additional factors such as the amount of annual precipitation and the yearly and seasonal variations in precipitation which have occurred ·in the past and would therefore in all probability occur in the future. These were questions of fact that had to be adduced through evidence at the trial.

In their reply, defendants contend that *Karlson* is not persuasive because in that case a treaty controlled the elevation of the lake and because in 1936 records for frequency and duration were not kept. These factors, however, do not affect the applicability of *Karlson.* That is, in determining the extent of taking described in the complaint and declaration of taking, *Karlson* holds that the Act of Congress authorizing the condemnation project and documents describing the scheme of regulation may be examined. And, when there is no way to determine the exact extent of taking by reference to these records, evidence to determine the probable effect the imposition of the easement would have upon the lands may be introduced and relied upon. *See, also, United States v. 2,648.31 Acres of Land, etc.,* 218 F.2d 518 (4th Cir.1956). It makes no difference that today we have more accurate data, in fact, if anything, this would enhance its probative value and admissibility.

The declarations of taking in the present cases state that the United States is taking "the perpetual right, power, privilege and easement occasionally to overflow, flood and submerge," the flowage easement area described "in connection with the operation and maintenance of the Harry S. Truman Dam and Reservoir, Missouri project as authorized by the Act of Congress approved September 3, 1954 (Public Law 780–83rd Congress), as modified by the Act of Congress approved October 23, 1962 (Public Law 87–874) ...." Public Law 87–874 authorizes the construction of the Harry S. Truman Dam and Reservoir, Missouri, as part of the general comprehensive plan for flood control and other purposes in the Missouri River Basin. This Act in turn refers to House Document 578 which contains explicit provisions on the operation of the Truman Dam.

As in *Karlson,* the interest the government takes is generally defined in the declarations of taking but recourse must be had to the Act of Congress and to the House Document to determine more specifically the extent of the taking. Furthermore, as in *Karlson,* these documents are not and can not possibly be made explicit enough to determine the frequency or duration of flooding and the resulting extent of taking. Thus, the parties are permitted to introduce expert evidence to aid the Commission in making this determination. Although it is impermissible for the government to increase or decrease the extent of the taking described, it is not impermissible for the government to introduce evidence to make more definite the interest acquired by the complaints and declarations. Accordingly, defendants' objections concerning the introduction of this evidence shall be overruled.

## B.

The defendants have also filed a series of objections generally stating that the Commission considered evidence that was not reliable or too speculative, that the Commis-

sion reached certain conclusions that were not supported by the evidence, and that the Commission did not render findings with sufficient detail to reveal the process by which it reached its final conclusions.[2]

We have reviewed the Commission's Report, which occupies some 50 pages, and find it to be a detailed and well written document. The Report clearly shows the factual bases for the finding of value and explicitly and comprehensively discusses the path that the Commission followed. The Report adequately discloses the approach taken by the Commission and satisfies the requirements set out in *United States v. Merz,* 376 U.S. 192, 84 S.Ct. 639, 11 L.Ed.2d 629 (1964).

Also, we find and conclude that there was ample evidence in the record to support the Commission's findings. The Commission carefully weighed and evaluated the evidence and did not base its conclusions on unreliable evidence or assumed expertise. It is not "our function to try the case *de novo* or to weigh questions of the credibility of witnesses or the weight to be given their testimony. Those were functions of the Commission, and its findings must be accepted unless clearly erroneous." *United States v. 403.14 Acres of Land, etc.,* 553 F.2d 565, 570 (8th Cir.1970). The Commission's findings were not clearly erroneous and these objections shall therefore be overruled.

## C.

The remaining objections relate to the testimony of certain experts.[3] The defendants contend that the government's witness Lloyd Wisdom, an hydrologist, relied upon evidence that was remote and inaccurate; that the government's witness William L. Loucks, a forester, based his opinion on the opinion of another expert witness (Mr. Wisdom) and relied upon irrelevant, immaterial, incompetent and otherwise inadmissible evidence; and that the government's wit-

---

**2.** These objections are Nos. 6, 7, 8, 10, 11, 12, 13(b), 14, 15, 16 and 17.

**3.** These objections are Nos. 1(i), 1(j), 3, 4, and 13(a).

ness Roy B. Miller, a real estate appraiser, based his opinion on hearsay and improperly relied on the information provided by other expert witnesses (Mr. Wisdom and Mr. Loucks).

■ In condemnation cases, the Commission and the Courts must apply federal procedural and evidentiary rules. Rules 43(a) and 71A, Fed.R.Civ.P.; Rules 101 and 1101, Fed.R.Evidence. Rule 703 of the Federal Rules of Evidence provides as follows:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

■ The defendants object to the testimony of Mr. Miller on the ground that the opinion as to value was based on hearsay. Defendants do not specify exactly what hearsay was relied upon but we have examined the Commission's summary of Mr. Miller's testimony and conclude that it was properly admitted and considered by the Commission.

It should be noted that, under Rule 703, FRE, an expert may base his opinion on non-admissible data if he as an expert would reasonably rely upon such data in reaching conclusions in his field. 3 *Weinstein's Evidence,* ¶ 703(02) p. 703–9. For Mr. Miller's testimony to be stricken on the ground that it was based on hearsay, it would have to be based on a type of data that real estate appraisers do not rely upon in reaching conclusions of value. We have not discerned any such data in Mr. Miller's testimony and the defendants have not pointed to any such data. Thus, there was no reason for the Commission to exclude the testimony of plaintiff's appraiser. *See United States v. 1,129.75 Acres of Land, etc.,* 473 F.2d 996 (8th Cir.1973).

■ Defendants also contend that Mr. Miller improperly based his opinion on the expert opinions of Mr. Wisdom and Mr.

Loucks and that Mr. Loucks improperly based his opinion on the opinion of Mr. Wisdom. Although defendants did not cite any authority in support of this proposition, we have found one condemnation case stating that expert testimony based on the opinion of another expert must be excluded, *6,816.5 Acres of Land, etc. v. United States,* 411 F.2d 834 (10th Cir.1969), but that case is readily distinguishable.

In *6,816.5 Acres,* the government contended that a mineral valuation expert based his opinion on the opinion of a colleague in the area. In the present cases, Mr. Loucks, a forester, examined Mr. Wisdom's hydrology data to frame an opinion on the possible effect flooding would have on the foliage. Mr. Miller, a real estate appraiser, examined the hydrology data provided by Mr. Wisdom and forestry data provided by Mr. Loucks in arriving at his estimates of value. An expert cannot be an expert in all fields, and it is reasonable to expect that experts will rely on the opinion of experts in other fields as background material for arriving at an opinion. Moreover, Rule 703 FRE explicitly allows an expert to base an opinion on facts or data made known to him at or before the hearing.

■ Concerning the remaining objections that Mr. Wisdom relied on evidence that was remote and inaccurate and that Mr. Loucks relied on irrelevant, immaterial, incompetent and otherwise inadmissible evidence, we need not reiterate our discussion in parts A and B of Section III of this opinion. It is sufficient to note that the hydrology data relied on by Mr. Loucks was admissible and it was up to the Commission to weigh the testimony of those experts. We conclude that the Commission's findings in this respect are not clearly erroneous. *United States v. 403.14 Acres of Land, etc., supra,* 553 F.2d 565. Defendants' objections shall be overruled.

IV.

Accordingly, it is

ORDERED (1) that plaintiff's objections should be and are hereby overruled. It is further

ORDERED (2) that defendants' objections should be and are hereby overruled. It is further

ORDERED (3) that the Report of the Commission should be and hereby is adopted. It is further

ORDERED (4) that within twenty (20) days of this same Order the government shall prepare a form of final judgment in this case.