Lindell GARRETT, Appellant,

v.

TREASURER OF THE STATE OF MISSOURI AS CUSTODIAN FOR THE SECOND INJURY FUND, Respondent.

No. 27803.

Missouri Court of Appeals, Southern District, Division One.

Jan. 17, 2007.

Motion for Rehearing and Transfer Denied Feb. 8, 2007.

Application for Transfer Denied March 20, 2007.

Randy Charles Alberhasky, Springfield, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, and Cara Lee Harris, Office of Atty. Gen., Springfield, for Respondent.

DANIEL E. SCOTT, Judge.

Claimant Lindell Garrett hurt his right shoulder on October 1, 2002, his last day of employment with Wicks Truck Trailers. He sought workers' compensation benefits from Wicks and the Second Injury Fund ("Fund"), and eventually settled with Wicks for 22.5% of the right shoulder. He pressed his claim against the Fund, and convinced the Administrative Law Judge ("ALJ") that his shoulder injury and his pre-existing psychological conditions combined to render him permanently and totally disabled. The Labor and Industrial Relations Commission ("Commission") reversed, concluding Claimant failed to prove

his pre-existing conditions were a hindrance or obstacle to employment, which is a condition of the Fund's liability under RSMo. § 287.220.[1] We affirm.

## Facts

Claimant was a hospital corpsman during the Vietnam War, sometimes working with injured soldiers in the combat zone. Shortly after his military service ended, he returned to Missouri. In 1973, he started working as a laborer for what is now Ozark Utility. By 1984, he had risen to service manager, a position in which he supervised 12–20 workers, interviewed and hired employees, and interacted with truck drivers and customers.

In May 1999, Peterbilt hired Claimant away from Ozark Utility, offering him a more lucrative position to help it open a new repair facility. Claimant's job responsibilities there were similar to those at Ozark Utility. In 2000, high fuel prices hurt truck sales generally, forcing Peterbilt to cut expenses company-wide. As part of this company-wide cutback, Claimant's shop was closed and he was laid off in November 2000.[2]

Claimant started with Wicks in February 2001. Again he was in charge of opening a repair shop which entailed hiring and firing employees, purchasing equipment, and interacting with vendors. In nineteen months working for Wicks, Claimant had three arguments with employees about their job performance. One of those times, he lost his temper and poked the other employee in the chest. On October 1, 2002, Wicks fired Claimant without ex-

---

1. Statutory references are to Missouri Revised Statutes (2000).

2. Throughout his briefs, Claimant continually argues Peterbilt fired him for poor job performance. But he cites no support in the

record for such claim, nor that he was a poor manager or otherwise responsible for his shop's closing. Claimant's own testimony attributed his layoff to economic circumstances, not job performance.

planation. When Claimant asked why, Wicks said it did not have to give a reason. Claimant's shoulder injury occurred while he was gathering up his personal equipment after the firing.

Around the time Claimant started working for Wicks, he spoke with another Vietnam veteran who was being treated for post-traumatic stress disorder ("PTSD"), and who recommended that Claimant also get a PTSD evaluation. Claimant went to Veterans Administration doctors in Kansas City and related a history of nightmares, flashbacks, and irritability. They referred him to Dr. Martin Faitak for psychological evaluation. Dr. Faitak saw Claimant in January 2002 and diagnosed mild to moderate PTSD. Claimant's PTSD was worse when Dr. Faitak re-evaluated him in May 2003, nine months after his accident and firing from Wicks.

For trial purposes, Claimant also had a disability evaluation by Dr. David Paff and a vocational rehabilitation evaluation by Wilbur Swearingin. Both witnesses testified live before the ALJ, and their testimony is further described below.

## Standard of Review

◼ We review the findings of the Commission, not the ALJ. *Clark v. FAG Bearings Corp.*, 134 S.W.3d 730, 734 (Mo. App.2004). We examine the whole record to see if sufficient competent and substantial evidence supports the award. *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222–23 (Mo. banc.2003).[3] An award contrary to the overwhelming weight of evidence is, in context, not supported by competent and substantial evidence. *Id.*

**3.** We cite several cases herein that were among many overruled by Hampton on an unrelated issue (*Id.* at 224–32). Such cases do not otherwise conflict with Hampton and are cited for legal principles unaffected thereby; thus we will not further note Hampton's effect thereon.

## Point I

◼ Claimant first claims the Commission "capriciously disregarded" the ALJ's findings, and should have deferred to the ALJ who personally heard the Swearingin and Paff testimony. We agree the Commission should duly consider an ALJ's credibility determinations, and should articulate any reasons for differing therefrom as an aid to judicial review. *Davis v. Research Medical Center*, 903 S.W.2d 557, 570–71 (Mo.App.1995). Yet the Commission need not defer to ALJ findings, credibility or otherwise, but is authorized to reach its own decisions. *Id.* at 569. The Commission did explain why it discounted the Swearingin/Paff testimony, and it was not due to *how* they testified, but (especially in Swearingin's case) because of the other evidence in the case.

### *Wilbur Swearingin*

Based primarily on a vocational rehabilitation evaluation and interview with Claimant, Mr. Swearingin opined that Claimant had psychological problems that hindered or were an obstacle to his employment before his October 2002 accident. The Commission found scant evidentiary support for this conclusion. Mr. Swearingin did not contact any of Claimant's prior employers for information, and did not know if Claimant missed any work due to PTSD or otherwise. He conceded Claimant's excellent work history; and that in all his jobs, Claimant routinely supervised 12–20 people, developed and maintained a customer base, created estimates, ordered parts, assigned work, hired and fired employees, and had to assure certain tasks were accomplished daily by himself or his subordinates. He agreed there was no

evidence that Claimant had problems setting, accomplishing, or fulfilling goals before the accident.

The Commission also found Mr. Swearingin's opinions inconsistent with Claimant's own description of his 29–year work history. Claimant worked successfully in supervisory capacities for many years. He had few altercations with co-employees and none with customers. There was practically no evidence of other work problems or any PTSD symptoms during those years and jobs. Claimant himself said he did not think PTSD interfered with or jeopardized any of his jobs. He offered no evidence of PTSD-related job difficulties or work absences, and he had no problem getting or keeping jobs before his accident. Peterbilt recruited him away from Ozark Utility to open and run its trailer repair shop from the ground up. Later, Wicks hired him to do the same. The Commission found that Mr. Swearingin tried to paint a different vocational picture, but Claimant's testimony was devoid of evidence that he suffered—or thought he suffered—any pre-accident hindrance or obstacle to employment, and certainly none attributable to PTSD.

Mr. Swearingin's credibility also was undermined, in the Commission's eyes, when he speculated about why Wicks fired Claimant, and was forced to retract certain statements on cross-examination.

### Dr. David Paff

Dr. Paff examined Claimant in August 2003, at Claimant's counsel's request, to rate Claimant's shoulder injury. His report was limited to shoulder issues, and his 25% shoulder rating was a basis for Claimant's settlement with Wicks. One year following his shoulder examination and rating, Claimant's counsel asked Dr. Paff to read Dr. Faitak's deposition and to render further opinions relating to PTSD. The Commission rejected only these latter opinions, concluding from Dr. Paff's trial testimony that he essentially was parroting or acting as a conduit for the opinions of others:

Q. What is your opinion here today in regard to what kind of preexisting disability Mr. Garrett had as a result of posttraumatic stress disorder?

A. *Well, I will tell you that what I am using as my opinion is somebody else's opinion that I have read because I didn't evaluate him. I didn't know that was going to be an issue, so I didn't evaluate it.* And these people work with this all the time. *So I am presuming they know what they are doing. It's not an opinion that was generated from my experience with the patient.*

. . . .

Q. Did you also take a history from him when you first saw him on August 18, 2003, in regard to him having suffered from posttraumatic stress disorder?

A. The history is very brief; it's really a history that he did suffer from it. It doesn't have anything to do with—I didn't ask him about his symptoms or anything. It was just an incidental statement that he made.

. . . .

Q: After having reviewed the records provided to you and the deposition from Dr. Faitak, in particular, and the history Mr. Garrett provided to you, do you have an opinion today as to how much disability, if any, Mr. Garrett suffered as a result of posttraumatic stress disorder prior to his work accident?

[OBJECTION AND OVERRULING OMITTED]

THE WITNESS: Well, I have an opinion. *But it's based on reading about his problem, but not based on my own history. Because I didn't take that history. I want to make sure that's clearly understood.* He has quite a bit of problem with his posttraumatic stress disorder, according to the VA records. And it has caused him a lot of difficulties. And I have to say that—I hate to give you a number because I've got other peoples' numbers in my head already. I think 20 or 30 percent, either one of them would be reasonable. There's no science to it.

. . . .

Q. Doctor, when you reviewed the records and noted the 30 percent preexisting disability, did you make the assumption that it was as to body as a whole?

A. That's my assumption. I don't know that it's correct, but it's my assumption.

. . . .

Q. And, again, you don't know if the 30 and 20 percent are body as a whole, or if there is some other system that the VA uses?

A. That is correct.

Q. Again, you personally didn't glean any information from Mr. Garrett that you would have wanted to have if you were going to render an opinion about what disability he has associated with his posttraumatic stress?

A: That is correct.

Q. All of your information is just based upon the records you found in your review of the records from the VA regarding the posttraumatic stress?

A. That is correct.

(Emphasis ours.)

Expert opinion partially based on other expert opinion is not necessarily inadmissible.[4] But the Commission felt Dr. Paff's testimony showed he was largely "parroting" Dr. Faitak's PTSD opinions, especially since Dr. Paff never independently reviewed Claimant's PTSD condition, nor even discussed or obtained any PTSD history from Claimant. Mere exclusion of expert testimony, even if relevant and admissible, usually is not reversible error. *Bruflat v. Mister Guy, Inc.*, 933 S.W.2d 829, 833 (Mo.App.1996). A decision on admissibility of evidence will not be overturned absent an abuse of discretion. *Id.* The *Bruflat* court concluded the Commission did not abuse its discretion by rejecting part of one doctor's opinion that parroted another doctor's opinion. *Id.* Likewise, the Commission here could disregard Dr. Paff's PTSD opinions as "parroting," or as cumulative evidence, or could minimize its weight based on Dr. Paff's own disclaimers and caveats.

The Commission differed with the ALJ on the Swearingin/Paff testimony, but we find no abuse of discretion in either instance. The record shows the Commission carefully considered, did not "callously ignore, capriciously reject, or arbitrarily disregard," the ALJ's credibility determinations. *Davis,* 903 S.W.2d at 574. Point I is denied.

### Point II

Claimant contends the Commission's finding that Claimant failed to prove a pre-accident disability was unsupported by competent and substantial evidence. But Claimant does not really deny the

4. *See* RSMo. § 490.065.

Commission's cited evidence, so much as he argues that the ALJ's reasoning and conclusions were better, and the Commission should have deferred to them. We agree "there was sufficient evidence to support the ALJ's original determination. However ... the Commission is not bound or obligated to yield to the ALJ's determination of the credibility of witnesses or its other factual findings and we review the Commission's award, not the findings of the ALJ." *Davis,* 903 S.W.2d at 574. Thus, Point II will be successful only if this is "the rare case" when the Commission's award is contrary to the overwhelming weight of the evidence. *Hampton,* 121 S.W.3d at 223. Claimant's pre-accident work history, summarized above, alone shows this is not "the rare case."

Dr. Faitak's testimony, to which Claimant directs us, does not change this conclusion. At Dr. Faitak's January 2002 examination, nine months before the accident, Claimant's GAF (Global Assessment of Functioning) score was 55, which indicated moderate PTSD that affects functioning, but is not severe or debilitating. Dr. Faitak testified that Claimant's ability to cope with his PTSD was "pretty good;" he could maintain constant employment and had not lost jobs due to anger or difficulties with others. Claimant also had no history of difficulty performing his jobs or of interpersonal difficulties with co-workers.

■■■■■ Claimant's GAF score was 48 at Dr. Faitak's May 2003 re-examination, indicating more severe PTSD and more interference with daily functioning. But even if the PTSD had become an employment hindrance or obstacle by then, it was not necessarily so *nine months earlier* when the accident happened. The Fund is not liable for post-accident progression of pre-existing conditions. *Lammert v. Vess Beverages, Inc.,* 968 S.W.2d 720, 725 (Mo. App.1998). Claimant testified he had no

trouble finding or keeping employment before the accident; he did not feel his PTSD kept him from performing his job duties; and his boss at Wicks had indicated he was doing a good job. Dr. Faitak testified Claimant was satisfactorily coping with his PTSD work-wise in January 2002, and that his loss of employment could have contributed to his later, lower GAF score. The Claimant has the burden to prove all essential elements of his claim. *Royal v. Advantica Restaurant Group, Inc.,* 194 S.W.3d 371, 376 (Mo.App.2006).

We think the Davis court's observations apply equally here:

> Certainly there was sufficient evidence to support the ALJ's original determination. However, as noted *supra,* the Commission is not bound or obligated to yield to the ALJ's determination of the credibility of witnesses or its other factual findings and we review the Commission's award, not the findings of the ALJ. When, as in this case, the Commission disagrees with the ALJ's findings and credibility determinations, they become relevant in our review to ascertain whether the award is against the overwhelming weight of the evidence but prior to such time, they are to be given only such weight and deference as the Commission deems appropriate.... [T]he Commission's stated reasons for differing with the ALJ are proof that it did not callously ignore, capriciously reject, or arbitrarily disregard her findings on the issue of the credibility of the witnesses who testified before her, but duly considered them in reaching its contrary result. In our review of the whole record, we likewise have carefully considered the ALJ's findings, as well as the Commission's findings and reasons for differing with the ALJ. We have also reviewed all evidence in the record and we cannot say that the Commission's

award is not supported by competent and substantial evidence or that it is against the overwhelming weight of the evidence.

We therefore conclude that the Commission's findings and award were supported by competent and substantial evidence, that it was a reasonable result for the Commission to reach on consideration of all the evidence and was not contrary to the overwhelming weight of the evidence. 903 S.W.2d at 574. We affirm the Commission's award.

PARRISH, J., and RAHMEYER, P.J. CONCUR.