In the Missouri Court of Appeals
 Eastern District
 DIVISION ONE

PATRICIA (PARRISH) OTWELL, ) No. ED109447
 )
 Appellant, ) Appeal from the Labor and
 ) Industrial Relations Commission
vs. )
 )
TREASURER OF MISSOURI AS )
CUSTODIAN OF THE SECOND )
INJURY FUND, )
 )
 Respondent. ) FILED: November 2, 2021

 Introduction

 Patricia (Parrish) Otwell (“Otwell”) appeals from the decision of the Labor and Industrial

Relations Commission (the “Commission”) awarding her permanent partial disability (“PPD”)

against the Treasurer of Missouri as Custodian of the Second Injury Fund (the “SIF”). Otwell

settled her case with Daimler Chrysler (“Employer”) following her diagnosis of bilateral carpal

tunnel syndrome (the “Primary Injury”) and subsequently sought an award of permanent total

disability (“PTD”) from the SIF as a result of the combination of her Primary Injury with her

preexisting disabilities, including psychiatric illness. Otwell raises five points on appeal. Point

One asserts the Commission erred in excluding all testimony from vocational expert Timothy

Lalk (“Lalk”). Point Two challenges the Commission’s exclusion of testimony from a different

expert witness based on the exclusion of Lalk’s testimony. Point Three claims the Commission

erred in finding Otwell had no preexisting psychiatric disability contributing to a PTD finding
because the record supports a finding that Otwell suffered from a preexisting psychiatric

disability at the time she suffered the Primary Injury. Point Four asserts the Commission erred in

finding that the award for the Primary Injury could not support an award of PTD against the SIF.

Point Five maintains the Commission erred in denying PTD, or erred in not awarding PPD for

the Primary Injury combined with preexisting disabilities of the right shoulder, incontinence, and

psychiatric illness, because the evidence supported a finding that Otwell had preexisting

psychiatric disability. Because the Commission abused its discretion in excluding the entirety of

Lalk’s testimony, we grant Point One. On remand, we direct the Commission to admit Lalk’s

report and deposition testimony into evidence and determine its impact, if any, on the

Commission’s award. The remaining points on appeal raise issues that the Commission will

necessarily revisit on remand in light of Lalk’s testimony and its reevaluation of Otwell’s claim

of preexisting psychiatric disability. For that reason, our holding on Point One is dispositive of

this appeal and moots our consideration of the remaining points on appeal. Accordingly, we

reverse the Commission’s award and remand for further proceedings consistent with this

opinion.

 Factual and Procedural History

 Otwell, now sixty-three years old, began working for Employer in 1984 and continued

until May 2009, when Otwell accepted an offer to retire following the closure of Employer’s St.

Louis plant.

 Otwell reported complaints of bilateral upper extremity pain to Employer in February

2009, when she developed occupational injuries to her hand due to repetitive actions. On

February 10, 2009, Employer referred Otwell to a physician, and Otwell was ultimately

diagnosed with bilateral carpal tunnel syndrome. Otwell underwent carpal-tunnel release surgery

in April 2009.
 2
 The same year, Otwell filed a workers’ compensation claim against Employer for the

Primary Injury. Otwell initially alleged PPD, and she settled her Primary Injury claim with

Employer in February 2010. In January 2016, Otwell amended her claim, seeking coverage

under the SIF for PTD. Otwell alleged she was unemployable in the open labor market and was

permanently and totally disabled due to the combination of her Primary Injury with preexisting

disabilities of a prior shoulder injury, incontinence, and psychiatric illness. Otwell has not been

employed following her retirement from her job with Employer in 2009.

 Otwell settled her Primary Injury claim with Employer for 16% PPD on each wrist.

Otwell later pursued her claim for PTD against the SIF before an Administrative Law Judge

(“ALJ”), who conducted a hearing on Otwell’s SIF claim on March 6, 2019.

 Otwell alleged various disabilities predated her 2009 Primary Injury. In 2008, Otwell

developed urinary incontinence and underwent bladder sling procedures and additional therapy.

Otwell attributed her incontinence to having operated a particular machine while working for

Employer. Otwell settled her claim for this injury with Employer for 2.5% PPD. Otwell also

claimed a right shoulder injury that occurred while working for Employer prior to 2005.

 Otwell further alleged she suffered from a psychiatric disability that pre-dated the 2009

Primary Injury. At the hearing before the ALJ, Otwell testified about her history of mental

illness stemming from abuse outside her employment. Otwell alleged that the combination of

her preexisting psychiatric disability and physical impairments rendered her permanently and

totally disabled.

 In support of her claim for PTD, Otwell proffered expert witness testimony from Lalk, a

vocational rehabilitation counselor. Lalk prepared an eighteen-page vocational rehabilitation

evaluation report in 2017 after he interviewed Otwell in 2014 and reviewed her medical records

 3
and deposition.1 Lalk concluded that Otwell was unable to maintain employment in the open

market and was permanently and totally disabled. Lalk conducted a personal interview and

vocational testing of Otwell during which he observed Otwell had difficulty communicating,

poor mood control, and often stopped to cry between questions. Otwell told Lalk that she had

experienced depression throughout her life.

 In addition to interviewing Otwell, Lalk reviewed her medical records from a number of

physicians and counselors dating back to 2005. Relevant to this appeal, Lalk remarked that the

2005 medical records showed Otwell complained of difficulty sleeping. Lalk further reported

that Otwell’s treating physician in 2007 recorded Otwell’s complaints of stress and anxiety, and

prescribed her medication for depression. Lalk also reviewed records from 2007 through July

2009 of Elaine Toon (“Toon”), a licensed professional counselor who treated Otwell. Toon’s

records disclosed complaints of depression and anxiety that Otwell reported she had suffered

most of her life. The counselor’s records indicated Otwell raised issues of suicidal ideation,

childhood neglect, and abuse. Toon diagnosed Otwell with major depression recurrent, post-

traumatic stress disorder (“PTSD”), generalized anxiety disorder, and gambling addiction.

Counseling records from January 2008 indicated Otwell described having panic attacks and

stress related to her work as well as other physical, mental, and emotional issues. Lalk also

reviewed records related to Otwell’s hospital admission on March 23, 2009, for suicidal and

homicidal ideation with a diagnosis of major depression. Otwell was subsequently released, but

was hospitalized again in December 2009 for reported suicidal ideation, panic attacks, and

decreased sleep and appetite following the loss of her husband. Otwell’s hospital records

revealed an assessment of major depression and with an indication of a single, severe episode.

1
 Lalk’s report did not include a review of Dr. David Volarich’s records, but made an addendum after reviewing
those records indicating that the additional information did not change his opinion.

 4
Lalk also reviewed the records of psychiatrist Dr. Adam Sky (“Dr. Sky”), who performed a 2017

independent psychiatric exam (“IPE”). Dr. Sky’s records indicated Otwell suffered from

depression beginning in the late 1980s and had a history of major depression disorder, moderate

to severe recurrent, generalized anxiety disorder, PTSD, and gambling disorder.

 As part of his review of Otwell’s medical records, Lalk read a 2012 report prepared by

Dr. Eli Shuter (“Dr. Shuter”). Dr. Shuter had conducted an independent medical evaluation

(“IME”) of Otwell in 2011 but died before testifying in Otwell’s proceedings. The ALJ had

ruled Dr. Shuter’s report inadmissible because the report was prepared by a non-testifying

expert. During Lalk’s deposition, the SIF cross-examined him as to whether he “relied” on Dr.

Shuter’s report in reaching his conclusions regarding Otwell’s PTD. Counsel for the SIF defined

“rely” as “reviewed, read, looked at and then subsequently came to your conclusions because of

reviewing, reading and looking at those things.” Based on the SIF’s definition, Lalk answered

yes. Lalk’s report first mentions Dr. Shuter in his medical records review on page six and

discusses Dr. Shuter’s report for one page of the twelve-page review of medical records. Lalk

noted that Dr. Shuter indicated Otwell reported having anxiety and depression since the 1990s

when she first received psychiatric treatment, and that Dr. Shuter identified multiple preexisting

disabilities, including anxiety and depression. Lalk testified that he reviewed Shuter’s IME

along with Dr. Sky’s IPE and other medical records.

 Lalk testified he did not know precisely when Otwell’s psychiatric symptoms began. But

based on his review of all the medical records provided to him and his discussions with Otwell,

Lalk opined that Otwell reported psychiatric conditions predating the Primary Injury, particularly

depression and anxiety dating back to the 1980s or early 1990s. In concluding that the totality of

the medical records demonstrated evidence that Otwell suffered psychiatric problems impacting

 5
her ability to work prior to the Primary Injury, Lalk referenced Otwell’s early counseling records

as well as the patient histories recorded by later physicians. In his report’s two-page summary

and conclusions, Lalk made no mention of Dr. Shuter or Dr. Shuter’s IME report. Lalk’s

summary and conclusions referred to other medical providers, particularly Toon and Dr. Sky, in

reaching his conclusion that Otwell was permanently and totally disabled.

 The SIF objected to the admission of Lalk’s testimony in its entirety. As a basis for its

objection, the SIF argued that Lalk relied upon the report of Dr. Shuter when forming his opinion

as to the nature and extent of Otwell’s disability. The ALJ agreed and excluded the entirety of

Lalk’s testimony, finding Lalk referenced and relied on Dr. Shuter’s report in several places in

his report and deposition. The ALJ considered Lalk’s own testimony that he had reviewed and

relied on Dr. Shuter’s findings in forming his own conclusions. The ALJ excluded all of Lalk’s

testimony and report as inadmissible hearsay.

 Otwell also sought to introduce testimony from Dr. David Volarich (“Dr. Volarich”),

who conducted an IME in 2018 and reviewed Otwell’s medical records. The Commission

adopted the ALJ’s finding that Dr. Volarich did not review any psychiatric medical records. The

Commission affirmed the ALJ’s ruling to exclude the portion of Dr. Volarich’s testimony where

he concurred with Lalk’s assessment that Otwell was permanently and totally disabled due to the

combination of the Primary Injury and her psychiatric disability.

 Following the hearing, the ALJ found in favor of Otwell and awarded her PPD against

the SIF on June 27, 2019. The ALJ denied Otwell’s claim for an award of PTD, finding no

substantial evidence that Otwell suffered from a significant preexisting psychiatric disability. As

a result, the ALJ did not factor in Otwell’s preexisting psychiatric disability in its computation of

the PPD award. In rejecting Otwell’s claim of preexisting psychiatric disability, the ALJ found

 6
that critical patient history on complex medical treatment remained unverified. The ALJ

awarded Otwell PPD based on the Primary Injury at 16% referable to each wrist combined with

the preexisting conditions of incontinence at 2.5% PPD and right shoulder disability at 15%

PPD. The ALJ found the combination of these disabilities amounted to an increased overall PPD

of 33.33% of the body as a whole (133.32 weeks). The ALJ found the SIF was liable for an

additional 32.52 weeks of PPD.

 Otwell filed an application for review of the ALJ’s award to the Commission. Otwell

alleged the ALJ erred in not admitting certain exhibits and portions of testimony and in finding

she did not have a preexisting psychiatric disability so as to support an award of PTD.

 The Commission issued its decision in December 2020 affirming and adopting the ALJ’s

award of PPD with minor changes. The Commission found Otwell was not entitled to PTD

benefits against the SIF because she did not clearly prove her psychiatric conditions were

disabling at the time of the Primary Injury. The Commission noted the ALJ considered relevant

to Otwell’s credibility the lack of hospitalization or treatment records corroborating her claim of

suicidal thoughts predating the Primary Injury. The Commission found that by failing to clearly

prove preexisting psychiatric disability, Otwell did not meet the required first step in order to

then determine the preexisting disability’s synergistic effect in combination with the Primary

Injury. Otwell now appeals.

 Points on Appeal

 Otwell raises five points on appeal. Point One asserts the Commission erred in excluding

Lalk’s vocational expert testimony because Lalk did not solely rely on Dr. Shuter’s inadmissible

report, which itself did not express an opinion on employability or PTD, in concluding that

Otwell had preexisting psychiatric disability. Point Two maintains the Commission erred in

excluding Dr. Volarich’s testimony based on exclusion of Lalk’s testimony in that Dr. Volarich
 7
merely indicated he agreed with Lalk on the issue of PTD, and the SIF did not timely object to

his testimony. Point Three contends the Commission erred in finding there was no evidence of

documented symptoms of psychiatric disability predating the Primary Injury because the law

does not require a preexisting condition be symptomatic and because substantial evidence from

expert testimony supported finding Otwell suffered from a preexisting psychiatric disability.

Point Four posits the Commission erred in finding the Primary Injury settlement of 16% per

wrist could not support PTD because Section 287.2202 does not require a specific threshold on

the Primary Injury to combine with a preexisting condition. Point Five argues the Commission

erred in either not awarding PTD or not awarding PPD for the Primary Injury combined with

psychiatric illness, right shoulder injury, and incontinence because the evidence supported

finding Otwell suffered from a preexisting psychiatric disability.

 Standard of Review

 We adhere to the standard for reviewing decisions of the Commission in workers’

compensation as set forth in Article V, section 18 of the Missouri Constitution and Section

287.495.1. Hogenmiller v. Miss. Lime Co., 574 S.W.3d 333, 336 (Mo. App. E.D. 2019). The

Constitution directs us to determine whether the Commission’s decision is “authorized by law”

and “whether it is supported by competent and substantial evidence upon the whole record.” Id.

(quoting Mo. Const. art. V, section 18; Johme v. St. John’s Mercy Healthcare, 366 S.W.3d 504,

509 (Mo. banc 2012)). Under Section 287.495.1, we may modify, reverse, remand or set aside

the Commission’s decision on the following limited grounds: “(1) the Commission acted without

or in excess of its powers; (2) the award was procured by fraud; (3) the facts found by the

Commission do not support the award; or (4) there was not sufficient competent evidence in the

2
 All Section references are to RSMo (2016), unless otherwise indicated.

 8
record to warrant the making of the award.” Id. (citing 287.495.1(1)–(4); Johme, 366 S.W.3d at

509).

 “We defer to the Commission’s determinations with regard to witness credibility and the

weight accorded to conflicting evidence.” Id. (citing Greer v. SYSCO Food Servs., 475 S.W.3d

655, 664 (Mo. banc 2015)). “An award that is contrary to the overwhelming weight of the

evidence is, in context, not supported by competent and substantial evidence.” Reynolds v.

Wilcox Truck Line, Inc., 587 S.W.3d 675, 681 (Mo. App. W.D. 2019) (quoting Hampton v. Big

Boy Steel Erection, 121 S.W.3d 220, 223 (Mo. banc 2003)). Additionally, “[w]e will not

overturn the Commission’s decision on the admissibility of evidence absent an abuse of

discretion.” Farmer v. Treasurer of Mo. as Custodian of the Second Injury Fund, 567 S.W.3d

228, 230 (Mo. App. S.D. 2018) (internal citations omitted). However, we review the

Commission’s determinations of law de novo without deference to the Commission.

Hogenmiller, 574 S.W.3d at 336 (internal citation omitted).

 While generally we limit our review only to the findings of the Commission and not the

ALJ, where the Commission affirms and adopts the ALJ’s award in its decision, we may review

the findings of the ALJ as adopted by the Commission. Cardwell v. Treasurer of the State of

Mo., 249 S.W.3d 902, 906 (Mo. App. E.D. 2008) (internal citation omitted).

 Discussion

I. Point One—Exclusion of Expert Witness Testimony

 In Point One, Otwell argues the Commission erred in excluding the entirety of Lalk’s

vocational expert testimony because Lalk did not improperly rely on inadmissible testimony to

reach his conclusion that Otwell had preexisting psychiatric disability and was PTD.

 9
 Section 490.065.2, RSMo (Cum. Supp. 2018), governs the admissibility of expert

testimony in civil, non-jury proceedings and sets forth the parameters for the facts on which an

expert opinion may reasonably rely. The statute provides as follows:

 (1) If scientific, technical or other specialized knowledge will assist the trier of fact
 to understand the evidence or to determine a fact in issue, a witness qualified as an
 expert by knowledge, skill, experience, training, or education may testify thereto in
 the form of an opinion or otherwise;

 (2) Testimony by such an expert witness in the form of an opinion or inference
 otherwise admissible is not objectionable because it embraces an ultimate issue to
 be decided by the trier of fact;

 (3) The facts or data in a particular case upon which an expert bases an opinion or
 inference may be those perceived by or made known to him at or before the hearing
 and must be of a type reasonably relied upon by experts in the field in forming
 opinions or inferences upon the subject and must be otherwise reasonably reliable;

 (4) If a reasonable foundation is laid, an expert may testify in terms of opinion or
 inference and give the reasons therefor without the use of hypothetical questions,
 unless the court believes the use of a hypothetical question will make the expert's
 opinion more understandable or of greater assistance to the jury due to the particular
 facts of the case.

Section 490.065.1, RSMo (Cum. Supp. 2018); see Hogenmiller, 574 S.W.3d at 336–37 (internal

citation omitted); see also Kivland v. Columbia Orthopaedic Grp., 331 S.W.3d 299, 310–11 (Mo.

banc 2011) (applying pre-amended Section 490.065 to review the Commission’s admission of

expert witness testimony in workers’ compensation proceedings).

 Because the Commission’s admission or exclusion of expert witness testimony is

discretionary, we consider only whether the Commission’s evidentiary ruling abused its

discretion. See Farmer, 567 S.W.3d at 230 (internal citation omitted); see also Hogenmiller, 574

S.W.3d at 337 (internal citation omitted); Daly v. State Tax Comm’n, 120 S.W.3d 262, 267 (Mo.

App. E.D. 2004) (internal citations omitted) (noting “[a] trial court, and by extension the

Commission, retains broad discretion over the discovery process and the admissibility of

 10
evidence”). “In deciding whether to admit an expert’s testimony, the Commission is required to

ensure . . . only that the statutory factors are met—not that they are met to any particular degree.”

Hogenmiller, 574 S.W.3d at 337 (internal citation omitted). The Commission abuses its

discretion to exclude expert witness testimony where it “erroneously finds that the requirements

of the expert witness statute are not met.” Kivland, 331 S.W.3d at 311 (internal citation

omitted). We will reverse the evidentiary ruling where it is “clearly against the logic of the

circumstances then before the trial court and . . . so unreasonable and arbitrary that the ruling

shocks the sense of justice and indicates a lack of careful deliberate consideration.” Revis v.

Bassman, 604 S.W.3d 644, 650 (Mo. App. E.D. 2020) (omission in original) (internal quotation

omitted).

 Here, Otwell presented Lalk’s vocational expert testimony in support of her claim for

PTD. Section 287.020 defines “total disability” to mean “inability to return to any employment

and not merely mean inability to return to the employment in which the employee was engaged

at the time of the accident.” Section 287.020; Reynolds, 587 S.W.3d at 682 (quoting Scott v.

Treasurer of State—Custodian of Second Injury Fund, 417 S.W.3d 381, 386 (Mo. App W.D.

2014)). “It is well established that the test for determining whether a claimant is permanently

and totally disabled ‘is whether the worker is able to compete in the open labor market.’” Id.

(internal quotation omitted). “The ability to compete in the open labor market hinges on

whether, in the ordinary course of business, any employer would be reasonably expected to hire

the individual given his or her present physical condition.” Id. (internal quotation omitted); see

also Atchison v. Mo. State Treasurer, 603 S.W.3d 719, 724 (Mo. App. S.D. 2020) (affirming the

Commission’s award of PTD for SIF liability under Section 287.220.2 after finding the

employee’s preexisting disabilities of degenerative disc and joint diseases combined with the

 11
primary injury were serious enough to be a hindrance of obstacle for future employment). Thus,

an expert opinion as to Otwell’s ability to compete in the open labor market due to her alleged

preexisting psychiatric disability, in addition to her preexisting shoulder injury and incontinence,

is relevant to her claim for PTD. See Reynolds, 587 S.W.3d at 682 (internal citation omitted).

 The SIF argued that Lalk, when rendering his opinion as to Otwell’s preexisting

psychiatric disability, improperly relied on the inadmissible report of the deceased, non-

testifying Dr. Shuter. The SIF sought to have the Lalk’s testimony excluded from evidence. The

ALJ ruled to exclude the entirety of Lalk’s testimony, and the Commission adopted that

evidentiary ruling.

 “An expert cannot be an expert in all fields, and it is reasonable to expect that experts will

rely on the opinion of experts in other fields[.]” State ex rel. Mo. Highway & Transp. Comm’n

v. Modern Tractor & Supply Co., 839 S.W.2d 642, 655 (Mo. App. S.D. 1992) (emphasis in

original) (quoting United States v. 1,014.16 Acres of Land, 558 F. Supp. 1238, 1242 (1983)).

Yet “if the testifying expert merely acts as a conduit for another non testifying expert’s opinion,

the ‘expert opinion’ is hearsay and is inadmissible[.]” Id. (internal quotation omitted); see also

Bruflat v. Mister Guy, Inc., 933 S.W.2d 829, 833 (Mo. App. W.D. 1996) (citing Modern Tractor,

839 S.W.2d at 655), overruled by Hampton, 121 S.W.3d 220 on the grounds that a reviewing

court is not required to view the evidence and all reasonable inferences drawn therefrom in the

light most favorable to the Commission.

 Hence, the issue before us is whether Lalk’s testimony can reasonably be viewed as

merely a conduit for Dr. Shuter’s inadmissible hearsay report. In assessing the ALJ’s ruling and

the Commission’s adoption of said ruling, we are mindful that an “[e]xpert opinion partially

based on other expert opinion is not necessarily inadmissible.” Garrett v. Treasurer of State of

 12
Mo. as Custodian for Second Injury Fund, 215 S.W.3d 244, 249 (Mo. App. S.D. 2007) (citing

Section 490.065, RSMo (1994)). “Reliance on information and the opinions of others does not

automatically disqualify an expert’s testimony.” Matter of Care & Treatment of Lester Bradley

v. State, 554 S.W.3d 440, 454 (Mo. App. W.D. 2018) (internal citations omitted) (denying an

appellant’s challenge to the admission of a psychologist’s expert testimony relying on the

opinion and conclusions of non-testifying evaluators). Rather, “[a]n expert is allowed to rely on

hearsay to support the expert’s opinion where . . . the expert testifies that the evidence is of a sort

reasonably relied on by experts in the field and the trial court [] finds that the evidence is

otherwise reasonably reliable.” Peterson v. Nat’l Carriers, Inc., 972 S.W.2d 349, 351 (Mo. App.

W.D. 1998) (affirming the trial court’s admission of expert witness testimony over objection on

grounds that all or some of it should be excluded as based on inadmissible hearsay); see also

Bradley, 554 S.W.3d at 454 n.10 (noting expert witnesses may consult and summarize a hearsay

source in arriving at their own opinion); Modern Tractor, 839 S.W.2d at 655 (noting an expert in

one field may rely on hearsay from an expert in another field). In finding that Missouri law does

not prohibit an expert from relying on hearsay when rendering an opinion, Peterson discussed the

guidelines under federal rules. Peterson, 972 S.W.2d at 354. Indeed, Missouri has since

explicitly adopted statutory language even more closely aligned with Federal Rule of Evidence

703. See State ex rel. Gardner v. Wright, 562 S.W.3d 311, 315–16, 317 (Mo. App. E.D. 2018)

(noting the legislature amended Section 490.065 in 2017 and “adopt[ed] an approach to the

admissibility of expert opinions that is consistent with federal standards”). “Merely because

an expert relied on information and opinions of others does not automatically disqualify his

testimony[;] [a]s long as such sources serve only as a background for his opinion and are not

 13
offered as independent substantive evidence . . . he should not be precluded from testifying.”

Peterson, 972 S.W.2d at 354 (omission in original) (internal quotation omitted).

 Given the well-defined direction of Peterson and the 2017 legislative amendments, we

find the Commission abused its discretion in excluding the entirety of Lalk’s testimony. See

Farmer, 567 S.W.3d at 230 (internal citation omitted); Peterson, 972 S.W.2d at 354 (internal

citation omitted); see also Revis, 604 S.W.3d at 650 (internal citation omitted). The record

before us demonstrates a lack of careful consideration by the ALJ and Commission as to reasons

for Lalk’s opinion as to Otwell’s PTD. See Revis, 604 S.W.3d at 650 (internal citation omitted).

The Southern District in Garrett held the Commission was free to disregard the expert witness’s

opinions on PTSD because the opinions merely “parroted” the opinion of another physician, and

the expert witness had not independently reviewed the employee’s condition nor discussed or

obtained any PTSD history directly from the employee. Garrett, 215 S.W.3d at 249. The facts in

Garrett are substantially distinguished from the present case. See id. Here, the record before us

shows that Lalk conducted his own personal interview and evaluation of Otwell. Lalk also

reviewed multiple sources of medical records relating to Otwell, Dr. Shuter’s report being just

one of the records reviewed. See id. Although Lalk said in cross-examination that he “relied”

on Dr. Shuter’s report in forming his opinion, we reject this response as dispositive on this issue

of reliance because of the broad definition of the term “rely” upon which SIF’s counsel premised

his question. A thorough review of Lalk’s deposition testimony and report exhibits minimal

contextual discussion of Dr. Shuter’s IME report. The limited reference to Dr. Shuter’s report

could scarcely allow Lalk’s testimony to be viewed or otherwise characterized as a mere

“conduit” for Dr. Shuter’s testimony. See id.; Modern Tractor, 839 S.W.2d at 655 (internal

citation omitted). Lalk’s discussion of Dr. Shuter’s report consists of a single page in the twelve-

 14
page medical records review. Without question, Lalk noted Dr. Shuter’s reference to Otwell’s

self-reporting of experiencing and receiving treatment for anxiety and depression since the

1990s. But Lalk identified similar findings in several other records, including Toon’s 2007–

2009 counseling records indicating Otwell suffered depression and anxiety most of her life and

Dr. Sky’s IPE report indicating Otwell’s history of depression beginning in the late 1980s. Lalk

testified he reviewed these records along with Dr. Shuter’s report and other medical records.

Importantly, we note that Lalk’s summary and conclusions make no mention of Dr. Shuter or Dr.

Shuter’s report, significantly undermining the SIF’s argument that Lalk’s conclusions merely

parroted Dr. Shuter’s report. See Garrett, 215 S.W.3d at 249. To the contrary, Lalk’s testimony

and report clearly demonstrate that in forming his opinion that Otwell was PTD and suffered

from a preexisting psychiatric disability, Lalk referred to numerous other medical providers,

particularly Toon and Dr. Sky. Lalk considered records from a host of medical providers dating

back to 2005. Lalk also personally interviewed and evaluated Otwell, making his own

observations and conducting vocational testing. These facts are substantially and materially

different from the facts of Garrett. See id. Given the record before us, we are persuaded that the

Commission’s ruling to exclude Lalk’s testimony in its entirety was clearly against the logic of

the circumstances and displayed a lack of careful, deliberate consideration. See Revis, 604

S.W.3d at 650 (internal citation omitted).

 Any concerns the ALJ and Commission intended to address by excluding Lalk’s

testimony are more appropriately addressed as matters affecting the weight and credibility

afforded to the evidence at issue. See id. at 656 (quoting Kivland, 331 S.W.3d at 311) (“[A]ny

weakness in the factual underpinnings of the expert’s opinion . . . goes to the weight that

testimony should be given and not its admissibility.”) (omission in original); Bradley, 554

 15
S.W.3d at 454 (internal quotation omitted) (“[Q]uestions regarding the sources and bases of

an expert’s opinion affect the weight rather than the admissibility of the opinion.”); see also

Patterson v. Cent. Freight Lines, 452 S.W.3d 759, 767 (Mo. App. E.D. 2015) (internal citations

omitted) (noting the Commission may determine the weight accorded to medical expert

testimony and is deemed an expert on an employee’s employability). The deference we give to

the weight and credibility accorded to the evidence by the Commission does not supplant the

rules governing admissibility of expert testimony—which are issues of law relegated to this

Court. See Hogenmiller, 574 S.W.3d at 336 (internal citation omitted). Point One is granted.

 On remand, we direct the Commission to admit Lalk’s testimony and reconsider the

award in light of Lalk’s testimony, according the weight and credibility to the evidence as it

deems proper. See id. In particular, although the ALJ found that the record lacked medical

evidence of preexisting psychiatric disability, the record before it, and the Commission, did not

contain critical evidence from the vocational expert testimony of Lalk or certain parts of Dr.

Volarich’s IME testimony, which may prove relevant to determining whether Otwell established

PTD from the combination of her preexisting psychiatric disabilities and the Primary Injury. See

Atchison, 603 S.W.3d at 724; Reynolds, 587 S.W.3d at 682 (internal citation omitted); Patterson,

452 S.W.3d at 767 (internal citations omitted).

 Because the Commission will necessarily address the remaining points on appeal when

reconsidering Otwell’s workers’ compensation award with respect to her claim of preexisting

psychiatric disability, Point One resolves the appeal.

 16
 Conclusion

 The decision of the Commission is reversed. We remand to the Commission for

reconsideration of the award consistent with this opinion.

 _________________________________
 KURT S. ODENWALD, Presiding Judge

Kelly C. Broniec, J., concurs.
John P. Torbitzky, J., concurs.

 17